NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LUIS ZAPIACH, M.D., on assignment of Donovan M.,<br><br>    Plaintiff,<br><br>v.<br><br>EMPIRE BLUE CROSS BLUE SHIELD,<br><br>    Defendant. | Civil Action No: 17-10179-SDW-SCM<br><br>**OPINION**<br><br>April 17, 2018 |

**WIGENTON**, District Judge.

Before this Court is Defendant Empire HealthChoice Assurance, Inc. d/b/a Empire Blue Cross Blue Shield's Motion to Dismiss Plaintiff Luis Zapiach's Complaint pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6). This Court has jurisdiction pursuant to 28 U.S.C. § 1331. This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, Defendant's Motion to Dismiss is **GRANTED**.

    I.        **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff is a healthcare provider located in Bergen County, New Jersey who performed emergency surgery on Donovan M. ("Patient") on or around June 5, 2016. (Compl. ¶¶ 1, 3-6, ECF No. 1.) Patient is a participant in the New York City District Council of Carpenters Welfare Fund ("the Plan"), a health benefits plan governed by the Employee Retirement Income Security Act of

1

1974 ("ERISA");[1] and Defendant is the Plan's administrator. (*Id.* ¶¶ 2, 7; *see generally* the Plan, ECF No. 5-2.) Plaintiff alleges that he obtained an assignment of benefits from Patient and submitted a Health Insurance Claim Form demanding reimbursement from Defendant in the amount of $45,950. (*Id.* ¶¶ 7-8, Exs. B-C.) Defendant issued payment to Plaintiff in the amount of $3,599.98, and indicated that an additional $1,542.85 was Patient's coinsurance liability. (*Id.* ¶ 9, Ex. D.) Plaintiff instituted this civil action, alleging that he is entitled to an additional reimbursement in the amount of $40,807.17 from Defendant. (*Id.* ¶ 13.)

On October 31, 2017, Plaintiff filed a three-count Complaint alleging: failure to comply with emergency service cost sharing in violation of N.J. Admin. Code § 11:4-37 (Count One); failure to make all payments pursuant to a member's plan in violation of 29 U.S.C. § 1132(a)(1)(B) (Count Two); and breach of fiduciary duty under 29 U.S.C. §§ 1104(a)(1), 1105(a), and 1132(a)(3) (Count Three). (*See generally id.*) On December 18, 2017, Defendant filed the instant Motion to Dismiss. (ECF No. 5.) Plaintiff submitted his opposition on January 16, 2018, and Defendant replied on January 22, 2018. (ECF Nos. 7-8.)

II.     **LEGAL STANDARD**

Generally, courts apply the Rule 12(b)(6) standard when a defendant challenges a plaintiff's standing to bring an ERISA claim. *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015).[2] In considering a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff

---

[1] A Court may look beyond the pleadings and "consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Here, this Court considers the Plan that Defendant attached in support of its motion because, although not attached to the Complaint, it is referenced therein.

[2] Although Defendant moves to dismiss under both Rules 12(b)(1) and 12(b)(6), this Court considers the motion under Rule 12(b)(6). *See Aetna, Inc.*, 801 F.3d at 372 (explaining that status under ERISA is treated as non-jurisdictional and involves a merits-based determination).

may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)); *Dillin v. Constr. & Turnaround Servs., LLC*, No. 14-8124, 2015 U.S. Dist. LEXIS 124873, at *7-8 (D.N.J. Sept. 18, 2015). "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But, conclusory or bare-bones allegations will not do. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.*; *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (discussing the standard for motions to dismiss).

Additionally, Rule 8(a)(2) requires a complaint to set forth a "short and plain statement of the claim showing that a pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The pleading standard under Rule 8 requires "more than an unadorned, the defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678.

### III. DISCUSSION

#### A. ERISA Claims

As explained below, the Complaint will be dismissed because Plaintiff has failed to exhaust the administrative remedies available under the Plan, Plaintiff lacks standing to bring the ERISA claims, and ERISA preempts Plaintiff's state law claim.

3

1. **Failure to Exhaust Administrative Remedies**

Prior to commencing a civil action for benefits due under an ERISA plan, a plaintiff must exhaust the administrative remedies available under the plan. *See Patient Care Assocs., L.L.C. v. N.J. Carpenters Health Fund*, No. 10-1669, 2012 U.S. Dist. LEXIS 52878, at *9 (D.N.J. Apr. 16, 2012) (citing *Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244 (3d Cir. 2002) ("It is well-established that an ERISA plan participant must exhaust the administrative remedies under the plan before she may initiate a lawsuit to recover benefits or otherwise enforce her rights under the terms of the plan pursuant to the cause of action created by ERISA § 502(a)(1)(B).")).[3]

Here, although the Complaint alleges that "Plaintiff engaged in the applicable administrative appeals process maintained by Defendant[,]" (Compl. ¶ 10), it does not allege that Plaintiff exhausted all administrative remedies available under the Plan (e.g., appealing decisions). This Court is not persuaded by Plaintiff's argument that discovery is necessary to determine whether he exhausted the plan's administrative remedies. (Pl.'s Opp'n Br. at 17, ECF No. 7.) Plaintiff is not entitled to the benefit of discovery where he has not pled that he has met the prerequisites prior to commencing this civil action. The Plan expressly addresses the administrative appeals procedures, detailing the manner in which an appeal must be filed, the information it must contain, and the time within which it must be filed:

> An appeal must be filed within one hundred, eighty (180) calendar days from the date of receipt of notice of a denial of services. . . . Under ERISA, if we deny a claim, wholly or partly, the Covered Person may appeal our decision . . . . [After receiving written notice of why the claim was denied] [t]he Covered Person has 180 days to appeal our decision.

---

[3] "A plaintiff is excused from exhausting administrative procedures under ERISA if it would be futile to do so." *Harrow*, 279 F.3d at 249. Here, Plaintiff does not make a futility argument.

(the Plan at 69 of 87.) As such, Plaintiff's ERISA claims in Counts Two and Three are dismissed for failure to exhaust administrative remedies.

### 2. Lack of Standing

Even assuming that Plaintiff had exhausted administrative remedies under the Plan, dismissal of his ERISA claims would be warranted because he lacks standing to assert them. Under ERISA, a participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan[.]" 29 U.S.C. § 1132(a)(1)(B); *see also* 29 U.S.C. §§ 1002(7) (defining participant), 1002(8) (defining beneficiary). "As ERISA is silent on the issue of standing, Third Circuit precedent sets forth that a healthcare provider may bring a cause of action by acquiring derivative standing through an assignment of rights from the plan participant or beneficiary to the healthcare provider." *Am. Orthopedic & Sports Med. v. Indep. Blue Cross, LLC*, No. 16-8988, 2017 U.S. Dist. LEXIS 26674, at *6-7 (D.N.J. Feb. 24, 2017) (citing *Aetna, Inc.*, 801 F.3d at 372) ("Healthcare providers that are neither participants nor beneficiaries in their own right may obtain derivative standing by assignment from a plan participant or beneficiary.").

Here, Plaintiff does not allege that he is a participant or a beneficiary of an ERISA plan. Rather, Plaintiff asserts he has derivative standing by virtue of an assignment of benefits he received from Patient. (Compl. ¶ 7, Ex. B; Pl.'s Opp'n Br. at 4.) However, the Plan expressly contains an anti-assignment provision stating that "coverage and any benefits under the Plan are not assignable by any Member without the written consent of the Plan[.]"[4] (the Plan at 59 of 87.)

---

[4] Defendant challenges the validity of Plaintiff's alleged assignment because the document is "cut off in part, post-dates the Services, and also does not contain a verifiable signature[;]" "nor does it identify the benefits assigned and the corresponding services rendered[.]" (Def.'s Mov. Br. at 13-14 (citing Compl., Ex. B), ECF No. 40.) This Court notes, however, that the document is dated June 10, 2016, within five days of the medical procedure at issue, and contains Patient's initials. (Compl., Ex. B.) Thus, the assignment would arguably be valid if not for the Plan's anti-assignment provision.

In opposition, Plaintiff argues that the anti-assignment clause is unenforceable and inapplicable. (Pl.'s Opp'n Br. at 5-6.)

> Though the Third Circuit has not specifically spoken on the enforceability of anti-assignment clauses in ERISA-governed plans, the weight of authority appears to uphold the validity and enforceability of anti-assignment provisions in the plans as a majority of circuits and district courts in the Third Circuit have given effect to anti-assignment provisions and denied standing.

*Am. Orthopedic & Sports Med.*, 2017 U.S. Dist. LEXIS 26674, at *8. Because the plain language of the anti-assignment provision is unambiguous, and because Plaintiff does not allege that the Plan authorized an assignment of Patient's benefits, this Court finds that the assignment is invalid.[5] Therefore, Counts Two and Three are dismissed because Plaintiff lacks derivative standing to assert them.[6]

### 3. ERISA Preemption

In Count One of the Complaint, Plaintiff seeks to hold Defendant liable for failing to comply with N.J. Admin. Code § 11:4-37.[7] (Compl. ¶¶ 14-17.) However, Plaintiff's state law claim is preempted by ERISA. Section 514(a) of ERISA, codified in 29 U.S.C. § 1144(a), expressly preempts "any and all State laws insofar as they . . . *relate* to any employee benefit plan." *Wayne Surgical Ctr., LLC v. Concentra Preferred Sys.*, No. 06-928, 2007 U.S. Dist. LEXIS 61137, at *20 (D.N.J. Aug. 20, 2007) (quoting 29 U.S.C. § 1144(a)). "The 'relates to' language must be given its normal meaning, which means a state law claim is preempted 'if it has a connection with

---

[5] The Complaint, as pled, does not support Plaintiff's argument that Defendant waived enforceability of the anti-assignment clause through its direct course of dealing with Plaintiff. *See Twombly*, 550 U.S. at 555 (requiring a short and plain statement that gives "the defendant fair notice of what the . . . claim is and the grounds upon which it rests").
[6] This Court notes that even if Plaintiff had derivative standing vis-à-vis a valid assignment, the assignment did not include a right to assert an ERISA claim for breach of fiduciary duty.
[7] Section 11:4-37 states that a "health benefits plan shall provide that the cost sharing applied to the covered person for emergency care shall be the same regardless of whether the services were rendered by network or out-of-network providers." N.J. Admin. Code § 11:4-37.3.

or reference to such a plan.'" *Illingworth v. Nestle U.S.A., Inc.* 926 F. Supp. 482, 492 (D.N.J. 1996) (citing *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 97 (1983)).

Here, Count One is based entirely on Defendant's alleged failure to fully reimburse Plaintiff for emergency services under the Plan. Because any determination as to Plaintiff's right to reimbursement of costs can only be made by referencing the terms of the ERISA-governed Plan, this claim is preempted under § 514(a). *See id.* (explaining that because the plaintiff's "claim relates to an employee benefit plan, ERISA preempts New Jersey law, and any entitlement to relief is governed by federal law"). Therefore, Count One is dismissed.

**B. No Private Right of Action for N.J. Admin. Code § 11:4-37.3**

Even if Count One was not preempted by ERISA, it must still be dismissed because N.J. Admin. Code. § 11:4-37.3 does not provide a private right of action. *See R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*, 773 A.2d 1132, 1144 (N.J. 2001) ("New Jersey courts have generally declined to infer a private right of action in statutes where the statutory scheme contains civil penalty provisions.")

> To determine if a statute confers an implied private right of action, courts consider whether: (1) plaintiff is a member of the class for whose special benefit the statute was enacted; (2) there is any evidence that the Legislature intended to create a private right of action under the statute; and (3) it is consistent with the underlying purpose of the legislative scheme to infer the existence of such a remedy.

*Id*. at 1143. "The Court considers the same factors to determine if an administrative regulation confers an implied private right of action." *N.J. Thoroughbred Horsemen's Ass'n v. Alpen House U.L.C.*, 942 F. Supp. 2d 497, 504 (D.N.J. 2013) (citing *Jalowiecki v. Leuc*, 440 A.2d 21, 25-26 (N.J. Super. Ct. App. Div. 1981)).

7

Because Plaintiff cannot establish the above factors, Plaintiff argues that whether § 11:4-37.3 confers a private right of action is an issue of first impression. (Pl.'s Opp'n Br. at 16.) This Court is not persuaded. There is no indication that the New Jersey Legislature intended to create a private right of action under § 11:4-37.3. *See N.J. Thoroughbred Horsemen's*, 942 F. Supp. 2d at 504-05; *R.J. Gaydos Ins. Agency, Inc.*, 773 A.2d at 1148 ("refusing to recognize implied private cause of action against insurance company in light of comprehensive regulation of insurance industry"). Therefore, Count One is dismissed.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is **GRANTED**. An appropriate order follows.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig:     Clerk
cc:       Steve C. Mannion, U.S.M.J.
          Parties